The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Be seated. The first case before this panel this morning is Lovett v. The Cracker Barrel Old Country Store. Mr. Bryant. Good morning. You're here from Newport, North Carolina. Yes, sir. That's in the Eastern District.  Good to have you here, sir. Thank you, Your Honor. Good morning. I have the pleasure of representing a lady named Beatrice Lovett. Ms. Lovett filed a lawsuit in the Eastern District of North Carolina alleging race discrimination and retaliation. After discovery, the district court, Judge Bull, granted summary judgment motion. And we appealed the summary judgment motion based on retaliation. So we're here before the court today asking the court to review the district court judge's decision to dismiss the retaliation claim. So you're not challenging the discrimination rule? No, Your Honor. No, Your Honor. We're just on the retaliation claim. And if I can give you a little background on it, Ms. Lovett began working for Cracker Barrel in August of 2012. After working for Cracker Barrel for a little while, she began to feel like she was experiencing some discretion. And the discrimination was related to training, related to promotion, and that type of thing. Well, she began to complain internally. She did not get a sufficient response. She failed. And so in September 2013, she actually went to the Equal Employment Opportunity Commission and she filed an EEOC complaint. December of 2013? September of 2013. September. Yes, sir. She filed an EEOC complaint. In the EEOC complaint, Ms. Lovett alleged, among other things, she alleged that her supervisor, a lady named Johnny Moore, they pronounce it Johnna Moore, but it's spelled Johnny, so I'll say it as it's pronounced, I mean as it's spelled. She alleged that a lady named Johnny Moore, who was her supervisor, she alleged that Johnny had been discriminated against her in particular. Well, after filing the EEOC complaint and after the employee became aware of it, Ms. Lovett says that Johnny Moore came to her and told her, look, people who go to the EEOC around here don't get work. Now, when was that? We don't have a specific time, but it was in the winter of 2013. She didn't have a specific date, but the winter of 2013, sometime after September 2013 to December 2013. Johnny Moore. Johnny Moore. Said to her. People that go to the EEOC don't get work around here. And did anything happen immediately with respect to her work schedule after Ms. Moore allegedly said that? Not immediately, like not within just those few periods of time. There are some things that did happen, like in February 2014, there was an evaluation that Ms. Lovett felt that the evaluation was retaliatory. But ultimately what happened is in March of 2014, a few months later, in March of 2014, Ms. Lovett filed another informal complaint. She was asked by the district manager to send me a letter telling me what you feel is going on. So she sent them a letter on March 10, 2014. And in that letter, she again complained about Ms. Johnny Moore and the way Johnny Moore was treating her. Well, five days later, Ms. Moore responded to her letter. And in her letter, she says a lot of things. But one thing she says is that we really don't want beaches around because she's been making so many accusations against the managers here, managers and other employees. So we really don't want beaches around is what she said. Well, the very next week, well, two weeks later, she takes her off of the schedule. So the very next week, March 15th. When you say she takes her off the schedule, what do you mean by that? What happened is Johnny Moore was the person responsible for making the schedule and giving people a certain number of hours a week. I'm asking specifically, was she removed completely from the schedule? Completely. Were the hours reduced? Completely. But wasn't that in response to her refusal or inability to work on the busiest weekends, the weekends which essentially are the times that Cracker Barrel most needs their employees. And as I understand the record, the employer says, we want to reward those employees who are willing to work the weekends, and so we give priority to those employees with respect to the rest of the schedule. Isn't that what they say? That's what the employer says, Your Honor. But we refute that. We refute that because what we say happened is that when Johnny Moore, after she responded, saying that she didn't want beaches around, that very next week she started reducing Ms. Lovell's hours. Wasn't that in response to your client's submission of her indication that she wasn't willing to work weekends? No, sir. The reduction of hours occurred first. First she started reducing the hours. The note was written, Johnny Moore responded March 15th. That very next week on the schedule she started reducing her hours.  My client contends that was never the case. My client contends it was never the case. Isn't there written evidence in the record to that effect? The defendants have what they call an availability form, and they're saying that that availability form established that she was not willing to work weekends. But what my client did is she called the district manager up March 21st before they took off the schedule and after they started reducing hours, she called the district manager up and said, look, I want as many hours as I can get. I'm trying to get hours. Is that the voicemail? Yes, sir. That's the voicemail. Who typed up the voicemail? The district manager typed it up. My client left it on the district manager's phone. So that was a record that they made up? That's their record. That record they prepared? Yes, sir. Nobody's disputing this. And she says, look, and this is the week after Johnny Moore wrote the letter about how they didn't want beaches around. She says, I'm trying to get as many hours as I want. I've been telling you guys that. But she's reducing my hours, and now she's trying to tell me I have to submit this availability form to try to justify reducing my hours. And so even before this whole availability form was even submitted, my client called and said she's retaliating against me. She's trying to use this availability form as an excuse. Didn't your client receive a letter from Mrs. Brown in HR sort of emphasizing the importance of making herself available on the weekends, which suggests she was responding to your client's unwillingness to make herself available? I will submit to you that is the defendant's. That's their version of what occurred. But that's not our version of what occurred. What happened with my client is that she could get nobody to respond. What Mrs. Brown told her was Johnny Moore is the one responsible, and you have to report to Johnny Moore. She's the one that sets the hours in the store. Why would she say that it's really important to make yourself available if there wasn't any concern about your client's availability? Well, see, our contention is that they were doing that. The reason why they did it was to try to justify firing my client, but it did not really occur. My client is saying she did not talk to this lady, and the lady did not tell her, you know, you have to make yourself available. Does the evidence support your version of this? Yes, sir. My client's declaration and the affidavit and the e-mails, and also the record as well, because what happened is— Did she give a deposition? She did give a deposition. So there's a deposition. Yes, sir. There's a declaration. Yes, sir. And there are e-mails. There's an e-mail, and there's some other record. Yes, sir. Yes, sir. And you claim, I'm sure, that since it's summary judgment, that they have to be looked at in a language favorable to you. Yes, sir, including the schedule, even the schedule. What about this remark about the EEOC? How do they explain that? They say it's an egregious remark, but, you know, they do admit that it's egregious, but they deny she said it. Well, what they said is brief. I read it. They called it a crude remark. Right. Yeah. But they deny she said it, but— But they deny she said it. But on summary judgment— A crude remark may be crude by your client to claim that she said it. I think they were— Is that what they're saying? No, sir. I think they're saying they admit that Johnny Moore made a crude remark. If she made the remark that it was crude— I thought they said that she vehemently denied saying it. They do. They do say that. So they said it wasn't said. Yeah. If it wasn't said, that would be their version of the fact. Correct. Correct. And your version of the fact is it was said. It indeed was said. And how did the district court deal with that? Well, what happened with the district court is the district court found that we had satisfied the prima facie case. And it goes on and talks about undoubtedly we've shown a temporal relationship to the protected activity and the termination. But when it got to the pretext issue, after they came forward and said, you know, we have an availability form, when the court got to the pretext issue, the court said— Why didn't that direct evidence? Why didn't it get the pretext that they got from saying that people who complained to the AEOC don't stay here? That's direct evidence. That's not a very great pretext. That's direct evidence. I would agree, Your Honor. Well, why aren't you arguing direct evidence? Well, why didn't you? We had a lot of arguments to make, Your Honor, at the lower court. And we considered whether it be a direct evidence. We just didn't think it would be an argument that the court would buy. Mr. Bryant, you say that your client was, in fact, available. But, I mean, the record belies that. Do you have a copy of the joint appendix here? I mean, I draw your attention to pages 452 and 453 of the record, where are you suggesting that those employee availability forms that appear there are somehow forged or not your client's submissions? Okay, let me say this. This is what we're suggesting, okay? First of all, those forms were not made available during discovery whatsoever. Those forms appeared for the first time like three days before they filed the motion for submission. So we had no opportunity— Do you object to that? Yes, Your Honor. How did the district resolve that? It did not rule on it. Okay, so what are you saying about them now? Well, the second thing we're saying about them, Your Honor, is they do not establish what they claim to establish. My client has made herself available the entire time. Even if you look at the schedules, until the last day— Well, Saturday and Sunday are marked off. Sir? Saturday and Sunday are marked off on page 452. Yeah, that's what they say. My client says that, first of all, she doesn't remember whether she submitted this or not, this availability schedule. The manager's signature is not on there. Right, the manager's signature. All the names on there is your client. The manager's signature is not on there. And the other thing, too, about the availability form is they continue—even if they got it when they said they got it, they continue to schedule my client on weekends, and she continued to work. She worked on weekends even after they got the availability form. So this idea that somehow or another we get this availability form and magically we can never schedule on the weekends again, that's not true. Instead, what they were doing is what my client said they were doing is using it as an excuse. And even before they took her off the schedule and alleged this availability form, she said this is what the lady is trying to do. She's trying to get me to sign this availability form so she can justify continuing to reduce my hours, but I want to work. And she's just trying to justify it. I guess I answered your question. I don't know. I kind of kept on going. Let me see here. So, Mr. Bryant, the district court's order says, quote, on September 30th, 2013, Lovett indicated to Moore that she was no longer available to work on Sundays, citing to the summary judgment record. And then, quote, also in March 2014, Lovett again restricted her schedule availability, removing all weekend shifts, citing to the record. Are you saying that those statements are inaccurate? Yes, Your Honor. Based on the summary judgment standard where our version of the facts are deemed to be true, yes, Your Honor. I'm saying those because she did not reduce her availability. What happened is she was available wanting more hours. What is your affirmative proof of availability? The fact that she actually worked. I mean, she actually worked. Even after they got this form, she actually continued. I'm not sure I follow you. So she worked some weekends is what you're saying? Is that what you're saying? She worked every time they scheduled her, Your Honor. Every time they scheduled her, she worked. Right. But they wouldn't schedule her on the weekends. But they did. Right until the last day she worked, they scheduled her on the weekends. How often? Where's that in the record, I guess? Let's see here. While I'm looking for it, I'll say that what the lower court did is when the lower court got to the pretext analysis, it basically said, look, because the only thing I have is her affidavit, her declaration, that's not enough to satisfy her pretext argument. Our contention is that the lower court was required, even with a single affidavit, was required to look at the evidence in the light most favorable to our client and not in the light most favorable to the defendant. Because in the summer judgment stage, we've got our hands tied behind our back, unless the court is required to abide by the summer judgment standard. Okay. So the judge says later on in the order, Moore met with Lovett on April 22, 2014, and explained that Lovett would not be scheduled for any hours unless she could add a dedicated weekend shift to her availability. Lovett declined to do so. Now, the court is citing to the record in making those determinations as a matter of law. No, he's making them as a matter of law. Your Honor, we have cited to, we categorically deny that that meeting occurred. In her affidavit, she says the lady never met with me, and the meeting did not occur. I mean, they're saying it did because they're trying to justify it. So if I accept what you just said, so the jury would have to make a decision whether a certain meeting took place? Is that what you're saying? That's one of the issues to be tried to the jury? I'm saying all the factual issues should be tried to the jury. Well, but I'm trying to focus. Yes, sir. I would say one of the issues. So your evidence that a meeting never took place is your client's assertion that a certain meeting never took place? It's my client's factual statement that it did not take place. Your client's assertion. Yes, sir. And so your contention is that you, with the burden of proof, through this testimony from your client that a certain meeting that the defendant claims took place and has some documentary support for, never took place, and in proving pretext, that the real reason the meeting didn't take place, which your client says it never took place anyway, was because they were retaliating against her. Do I have that right? I mean, is that the differential chain that you're undertaking to prove? The first thing would be that the meeting did not take place, and under the summary judgment standard, that a little court is required. And you have to prove the meeting never took place. On summary judgment, once I put forth factual evidence. No, no, no. I'm talking about at trial. Oh, at trial. You have to prove. You have to generate a genuine material fact, disputed fact, to survive summary judgment, and then at trial you would have to prove that a meeting that the defendant claims took place and that there's documentary evidence for actually never took place. Sure, and I can prove that by my client testifying it did not take place, because a jury is entitled to weigh the evidence, the credibility, and they're entitled to determine. I can have one witness say it did not take place. They can have 50 that says it did, and the jury could decide that what my client says is true. Yeah, because the jury believes your client takes care of it. Yeah, that takes care of it. And at summary judgment, we're required to believe the client. So you think that a discrimination case is kind of like a red light case? Like the defendant says, I had the green light, and the plaintiff says, no, I had the green light, and the jury is entitled to choose one. And the documents and the course of dealing and the business records, none of that is enough. No, I'm not saying that because if you look at all the documents, they all support our position. They do. They all support our position. The only way that the court ruled, I mean, found the factual statements he found, is because he said, I'm not even going to consider their affidavit on pretext, because she just filed a loan affidavit. I think you may be overstating it. It can't be that all the documents support your position, because we've got these employer availability forms that contradict your client's position. I'm saying on summary judgment. On summary judgment, you've got to take your position.  That's your point, but your red light's on. Thank you, Your Honor. Appreciate it. Mr. Page. Yes, sir. You're here for the Cracker Barrel. Let me bring a couple things up. Good to have you, sir. Thank you, sir. There's a real danger of bringing up too much. I know it. I know it. I was looking through the affidavit on the point that was just raised. Now, you agree we've got to look at the facts in the light most favorable to Ms. Lovett. I do, but it has to be citation to confident evidence. But you argue that there's these self-serving affidavits that we can't consider. Let me, let me. And the law doesn't support you on that. Well, the law says that self-serving. Affidavits are, I mean, evidence is evidence. But self-serving affidavits that have no citation to confident evidence of the record or that are contradicted by deposition testimony are not to be considered. Deposition testimony is another thing. Deposition testimony is another thing. But what about, we've got to look at it in the light most favorable to Ms. Lovett. And she said that she was told, after she filed that EEOC complaint, that people that do that don't stay around here. Right. And this was a retaliation case. Yes, sir. And after she was told that, she was fired. Yes, sir. That's looking at it in the light most favorable to her. Now you say, your people say, we didn't tell her that. Correct. We didn't tell her that. Correct. We vehemently deny that. Correct. It's a crude remark. You didn't even put the remark in your brief, those remarks. You didn't even recite them. And the judge didn't mention them. The district judge didn't mention those comments at all. This is a retaliation case. We take the view most favorable to him. I want you to assume that was said. Yes. How do you get around it if it's said? Okay. I want to focus on the pretext. So we deny it. They deny it. That's direct evidence. So she said she said. That's direct evidence. She says they told me people who go to the EEOC don't stay around here. It is also direct. That's direct evidence. Yes, sir. It is also direct evidence. That's going to animus. But as to the issue of pretext, which is what he has appealed on. It's available for pretext, too. I mean, but it sets it up. She was told, you go to the EEOC, you don't stay around here. And then they can't. But let's talk about the facts. Look at it in the light most favorable to her. We don't resolve the facts. Some jury does that. Yes, sir. But let's look at the facts that are undisputed. Okay? The two availability forms that your honors have been asking. I'm asking about the EEOC remarks. I'm focusing on that. I want to know how you're going to get around that. You don't even mention them in your brief. You call them crude remarks, which are vehemently denied. They are. A vehement denial doesn't cut it. Right. That's what makes – that's what juries deal with. Well, the focus – If she says it was said to her, the other person says it wasn't said to me. That's what they call a dispute. Right. That's a swearing match. And juries decide those kinds of things. But on summary judgment, we've got to believe her side of it. We have to believe her side of it as it's reported. That's right. To her. She says it was said. Ms. Moore denies that it was said. But it was said. So for purposes of summary judgment and for purposes of this appeal, it was said. All the remarks about the EEOC by your supervisors were said. Okay. You have to accept that. Okay. And then you have to argue from there. Can we – I'd like to talk about what the rest of the record that relates to the EEOC. Well, the rest of the record has to be weighed in the context of that. Okay. All right. All right. So the two – You haven't grappled with that in your brief. As I say, you haven't even said in your brief what was said about the EEOC. The plaintiff – You haven't even admitted that they ever said anything about the EEOC. The plaintiff did not allege in their brief that they had proven any sort of animus on the direct – any direct evidence of intentional. So we focused on the pretext, and that's what our brief focused on. What we do know is that a couple of statements made today are categorically false, that the availability forms submitted by Mrs. – We don't decide falsity or truthfulness in a summary judgment proceeding. But the affidavit on which she essentially relies upon for the entire appeal is directly contradicted by her own admissions and deposition and her own sworn documents. And that's the problem. She has created and tried to create an issue of fact for appeal as any plaintiff in any employment case or any summary judgment case could just file an affidavit at the end of discovery countering their sworn testimony and deposition and countering what they've sworn in documents to the employer and say, Well, I've got an issue. It's a he said, she said. She called me a B word or she called me an N word or she called me something. And suddenly we have – we can't – So your position is we have to disregard her affidavit. We do, and I can tell you why. We have to disregard the affidavit, which needs to be contrary to Rule 56. Well, there are a number of Fourth Circuit cases that are cited in our brief that talk about how self-serving affidavits that are not linked to competent evidence should be disregarded. It cannot be relied upon. Well, I don't think they say – see, this business about self-serving, every affidavit signed by any affiant is going to be self-serving. So you get into trouble when you keep talking about self-serving affidavit. The cases you allude to point out that you can't fix a deficient record constructed during discovery by coming along at the end and contradicting yourself under oath, right? That's what the cases say. So it's not that the affidavit is self-serving. It's that she contradicts herself. Why don't you tell us where those contradictions are? Sure. Okay. Okay. So starting with the entire history, we were looking at in August 2012 up through September 13 time period. And she's claiming all these things about being trained as a shift leader, not being trained as a shift leader, reporting race to Lisa Rice, reporting discrimination. It's actually in the EEOC complaint that's at issue here. I directly asked her about them in depositions, and in the deposition that is part of the joint appendix, she denies ever telling Lisa Rice that she made a race discrimination claim in January 2013 or in December 2012 or in November 2012. She also denies and admits that the person that she was complaining against, which is this woman named Kathy Little, was a comparator. She never got the shift leader position. She wasn't trained as a shift leader position. All that stuff about the shift leader. That all suggests that perhaps the jury might discount her credibility, but it doesn't really address the key piece of evidence that Judge King pointed out that suggests that there was some retaliatory animus involved in her not getting work. If I could point your honors to the competent evidence from September through March of 2014. September 13 to March 2014. We know that during that time that she, and by the way, this is important. Those two availability forms that we're talking about, she never contests them. She doesn't contest them in this brief. She doesn't contest them in deposition. She doesn't contest them in her affidavit. She doesn't say they're wrong. Mr. Bryant says that they were sandbagged by the affidavits. Well, what happened is the depositions were taken towards the end of the discovery period. She said, I didn't do that. We had computer records showing that she had reduced availability. And at the close of discovery, I asked the client to dig around, asked the store, and they found those two paper records. I gave them to Mr. Bryant's predecessor and said, do what you want to with them. Do you want to do any discovery? Nothing happened. That's what happened. So is it true that it was three days before you filed your motion for summary judgment? That's what I thought Mr. Bryant said. I don't think it was three days. I can tell you. But most importantly, she does not contest that she signed them and that they're accurate. She doesn't do that. What he said today is she does contest it. That's just wrong. She doesn't. She doesn't in her affidavits. She didn't on this appeal. He said the meeting didn't take place. Well, whether the meeting took place or not. He said the meeting didn't take place. We do know that Ms. Brown wrote her and said you need to be available for the weekend. Let's say the meeting didn't take place. Let's say it didn't take place. She was in constant contact with Ms. Brown. There's plenty of written record on that. It's all part of the joint opinion. Ms. Brown is the HR person back with Cracker Barrel. And there's plenty of back and forth between the two of them. Ms. Brown's investigating each time something comes up. And she says you need to be able to work on the weekends. Lisa Rice, the district manager, also talks about that issue. And, again, it's so important that Mrs. Lovett does not contest that she restricted her availability in September. And the record reflects, and we submitted all the payroll records, all the time records for everybody in the store. Her hours went from 20 point something hours to 16 point something hours from September all the way into March. They just reduced by the one day she took off. The whole time this meeting and this alleged thing is happening, this bad statement related to the EEOC, that's the undisputed truth that that happened. And so what the plaintiff doesn't dispute is that Cracker Barrel had a legitimate business need to say, we'd like people who work on the weekends to work during the week. That's important to us. What about his contention that despite submitting these forms, which he contests are accurate, that your client nonetheless kept giving her a weekend out? Is that right? Not true. Not true. He cites one instance in which she worked on one day, according to her testimony, which, by the way, is completely unsighted. It's in that affidavit. There's no record to it. There's no day to it. There's no payroll record, nothing that she backs up. But it's in her affidavit where she says on one day I worked late on a Sunday when I wasn't supposed to. There's no dispute from Cracker Barrel that your availability form helps, as any manager in a retail would know, helps you schedule people, but you still may ask people to work an extra hour or two or three. That's part of the nature of doing business. And so there's not a disregard. There's plenty in the record of Cracker Barrel's management back and forth with her saying, help us work with you on this thing. Help us understand scheduling. Your scheduling is important to us. If she didn't know that scheduling was important to us, she wouldn't have submitted a scheduling form. It proves itself. And now what she's contesting is that we scheduled to try to get back at her. When all the record in the case shows that we scheduled because we're trying to run a business. That's what that six-month period reflects. It reflects we're simply trying to run a business. And so when we get down to the end of the time, she does not dispute that she took both Saturday and Sunday off. And, in fact, you can see from our record that John Amore was told by HR if she comes back to you in April and she says she can work Sunday, give it to her. Get her back on the schedule. Undisputed on that as well. There was discovery here. There was written discovery. They took depositions of five or six of our people. He cites to none of it. He cites to none of the written record. We provided payroll records. And, by the way, all of which show that. Kind of ignored the evidence that's against you. But he's the one that's entitled to because he's up here on a summary judgment award. And you got more saying people who go to the EEOC don't get work around here. Saying to her. You got more saying to her that she was not concerned about the EEOC because, quote, all we have to do is send fried chicken to the EEOC because you know how those people all love our fried chicken. Unquote. That's what the record says that Moore said to Lovett about the EEOC. Notably. And you don't mention that in your briefs and the district judge doesn't discuss it. The significance of that or the possible weight of that. But that has to be accepted as fact. Well, it seems to me for purposes of whether you're entitled to summary judgment. And if it can be accepted as fact and you still win, then you're entitled to win. But you can't ignore it. You can't just ignore it and say it's a crude comment and it's not worthy of belief. It is notable, Your Honor. She said it. It is notable, Your Honor. That's what the woman said to me. That in the affidavit that you're looking at in today's counsel, they don't put a date on it. They don't put a location on it. They don't put a time on it. If this were the standard in summary judgment employment cases, that anybody could come in at the end of the day and say they called me a B word or an N word and, boom, I've got an EEOC. I'm back in action. There's nothing to corroborate this thing. And with that, she has two days with me sworn testimony. There are a lot of people in this country on uncorroborated testimony. Somebody's word. Somebody's word. And cases are tried on swearing matches. Yes, sir. One witness says one thing and the other one says something else, and the jury decides. That's what people off the street swear the jury to decide the facts, and they do. Yes, sir. I mean, not just in civil cases. They do it in criminal cases. She submitted an affidavit. This goes to understand that she's entitled to inferences. But the affidavit that she submits at the close of discovery, I don't get to pose her, is completely contrary to her deposition testimony on the shift leader situation on reporting Lisa Rice. It's completely contrary. And if, say, there's a 50-paragraph affidavit and 48% of them are demonstrably true, and at the end of it she says, and she called me the B word for going to EEOC, and the case is alive, there's got to be some standard here where the plaintiff has got to show some competent evidence to back up what she's saying rather than a bald, conclusory allegation. That would be the standard if this court were to allow her case to go forward. Do you recall off the top of your head the deadline for discovery? I know I'm asking a lot. I think it's in May, June. I don't recall. Well, the affidavit is executed in December. Her affidavit? Yes. Yeah. December 11th. Yeah. But you've been arguing to us that it was the end of discovery. She submitted it in response to our summary judgment brief, first time I saw it. Oh, so it wasn't submitted. I see. Okay. Right, of course. Yeah. And we see it and we're like, we can see that there are clear falsehoods in this thing, directly contrary to her deposition testimony, which is part of the appellate record. Right. You had already filed your summary judgment. Yes, sir. Of course. And so ultimately, you know, I understand Judge King's question about what she said, but all it is is essentially this terrible comment that she's just thrown out of thin air on top of a bunch of demonstrable falsehoods that are contrary to her deposition. You say your people contradicted her. Just Ms. Moore denies that it happened. It's some private meeting they had. Did she file an affidavit too? She did. So you filed affidavits too. We did. Right. So that's the issue. One says it was said. This is what Ms. Moore said. Yes. About the EEOC. Yes. And Ms. Moore says, I didn't say it. That's right. All right. If that's accepted as true, are you entitled to summary judgment? We are in this case because she cannot point to anything. Well, you say it can't be accepted as true. I'm asking you if it's accepted as true. Yeah. If Ms. Moore said that, then she's tried to get one prong of the test. She's completely missed the test, which is what she's focused on on appeal, which is the pretext analysis. That's the only thing they've asked about. That's what we briefed on. And on the pretext, she cannot show that scheduling people on the weekends versus weekends is false and that we were trying to essentially stick it to her for appealing. She has not shown no comparators at all that people who didn't get scheduled on the weekends somehow got other hours. She's done that. She had the opportunity to do that. The court noted it. The district court noted it. She didn't show any comparators on the shift leader claim, the earlier claim, and she showed no comparator. He notes, hey, she could have done this. She didn't, and there's a reason, because there's no evidence there. There's none. And so all she's got is essentially this bald, complete allegation that has no basis in fact that is denied. Which she didn't make when you deposed her. She only made it in the later filed affidavit. I just want some clarity on that. Yeah. I can't recall. I know it's not part of the joint appendix. I questioned her on everything I could think of for those two days. And, again, as you can see, the entire allegations in the EEOC, both of the things there are demonstrably false. And she admits it today. She does not contest that the things she submitted her EEOC claim are false. You must have asked her, though, what the evidence was to support her claim of retaliation, right, at the deposition. I did. I did. Did she mention any of those statements that she includes now in her affidavit? We went through, certainly, the issue of scheduling. No, I'm talking about the statement that Judge King has recited to you, the statements about the EEOC and the statements about not getting any work for people who complain. I believe she did. You believe she did? Honestly, I don't have the old deposition here with me. It's not part of the appellate record. They did make it part of the appellate record. Well, the record is the record. The appendix is not the record. Sure. The appendix is not the record. The record is the record. Yes, sir. The record is the appendix of parts of the record that you decide to put in there to show us. But we look at the entire record. Yes, sir. And either side is entitled to rely on the entire record. And I don't believe she submitted that deposition testimony in response to the summary judgment brief. I know she didn't. So, I'm just saying. It's still in the record. We certainly took her deposition. We have the transcript, and we'd be happy to provide it to the court. But the point that I want to make as to Cracker Barrel. She was pro se. She was pro se for the first two months. She was pro se at the beginning. She filed her complaint pro se. She did. That's right. She did. And she got counsel, and that counsel withdrew after a few months. And she got another counsel who was associated with the department. But she started out pro se. She did. And, again, the allegations in that pro se complaint she admitted were false as to the shift leader training thing. She's not appealing the discrimination claim. She's appealing the retaliation claim. Yes, sir. But she keeps bringing it up. I'm not sure if my three-person brief deals with the discrimination claim. And you don't deal with the remarks about the EEOC. You won't even repeat them. You just call them crude remarks that are denied, vehemently denied. Yeah. What's the difference between a denial and a vehement denial? I don't know. An adverb or an adverb. I'm going to take it as a denial. But you say it was vehemently denied, but you don't say what they were, what they said. And the district court doesn't address it. He doesn't say anything about it that I could find. What the district court was dealing with was essentially an affidavit submitted at the close of everything that contradicted what we knew was the competent record. And the court just said, I'm not going to consider this affidavit. Any other questions? Thank you, Your Honor.  Appreciate it. Thank you, sir. Mr. Bryant. Thank you, Your Honor. If I could just, first of all, start by when the opposing counsel was here, he kept saying this affidavit directly contradicts evidence in the record. But he never cited any contradiction related to the retaliation claim. And so I would submit to you that, no, that's not the case. It does not directly contradict. As a matter of fact, what she said during the affidavit is consistent with what she said in, I think, two full days of deposition. But if I could, I would like to just read to you. This is what Ms. Lovett said on March 21st. She says, but, you know, she makes it very clear that she doesn't need me for anything. You're reading from her deposition now? Yes. I'm reading from her affidavit. I'm reading from an email that she referenced in her affidavit. You're reading from the email? Email. Prepared by the company. Right. The transcript of the email that she left, the message. Correct. It was typed up by the company. By the company. All right. This appears at 447. That's what you're reading at. Right. Right. And it was sent March 21st. It says, but, you know, she makes it very clear. This is your client's voice. My client. And who's she? She's referring to Johnny Moore.  She is Johnny Moore. Yeah. But it's written by your, it's your client's voice. Talking to the district manager. All right. And she says, but, you know, she makes it very clear that she doesn't need me for anything. This week I got 11 hours or somewhere around 10 or 11 hours. You know, she doesn't have hours for me. I've told her that if she only has 10 or 12 hours for me, then I'm going to have to shorten my availability. So this week she's been, you know, when are you going to put in your availability? When are you going to put it in so she can justify shortening my hours? And so before she was even terminated, she's trying to tell people this whole availability thing is just a ruse. I'm ready to work. I'm willing to work. But she's trying to get me to fill out this form as a ruse. And that's, you know, if you believe. What do you say again about the form? Again? Yeah. I'm saying. The form screams I'm not working on the weekend. Yes. Okay. The form screams that. Now we can talk about the authenticity or the genuineness. But what do you say about the forms? I'm saying the forms were not the reason why they took off the schedule. The forms were the excuse. And she warned people that the forms were an excuse. Why would she give them the excuse? Because if she's been represented by counsel, I said don't give them the form. But you know. No, no. Fill out the form and say I'm available seven days a week, 24 hours a day. When you're in context of an employment situation like that, and people are saying you have to do this, you have to do this just to have a job. Well, you have to fill out the form, but you don't have to say I'm not available Saturday and Sunday. You still haven't explained to us why she did that. And to tell you the truth, I can't. I cannot explain to you. I can explain to you the fact that before. You're just playing the cards you were dealt, huh? Yeah. I can tell you that before these forms were even submitted, that before it was even done, she was saying I want to work. So the idea that this form is somehow because she doesn't want to work is not true. I mean, it's very clever on the part of the way she did it. She wants to work, but she doesn't want to work on the weekends. There's nothing wrong with that. There's nothing wrong with that. But that's not the case. That's what she was warning. As a matter of fact, if I can. Sounds like part of that thing. I did cite to the sealed appendix at 505 where there is documentation that even after they received this form, there is documentation that they went on a schedule on the weekend and she still worked. And the whole point is she never, any time they scheduled her, she worked. But that voicemail message that you read, it sounds like she is who you say it is. She's cutting her hours back. She's cutting hours. Because your client is complaining about she, Johnny Moore, cutting back her hours. Right. Right. She wants more hours. As a matter of fact, the day after she was turned, the day when she found out that she had no hours. But then she got this form. She calls Ms. Rice and she says, look, she's taking me off the schedule. And I'm going to labor board because I feel this retaliation. She's always wanted to work. And it's pretty clever on what the employer did. But we're at summary judgment. I mean, a jury hearing all these facts, hearing that two weeks before that, Johnny Moore sent a memo saying we don't want her around spreading her poisonous attitude. There's enough there from which a jury can say, you know, that this was retaliatory. It was clever retaliatory, but it was certainly there. I think what's clever, I was a district judge, and I always thought it was clever for a lawyer, particularly in a case like this, at the very end, in response to a motion for summary judgment, to compose some seven or eight or nine page affidavit and have his or her client sign it and clean up the case. And I'm afraid that, frankly, I'm kind of left with that here. Well, that's not what occurred, Your Honor. I don't mean that in a pejorative way. I do understand. But, you know, to get one of these pristine affidavits in response to a motion for summary judgment, when you had opportunities to make your record through interrogatories and requests for production and depositions, it's just something that I've never been very comfortable with. But, Your Honor, the affidavit, cites to the record. It's not like it's just, you know, just cites to the record over and over again. And if you look at affidavits, cites to things that are in the record that occurred contemporaneously with what was going on. So it's not like it wasn't just trying to create some kind of record. Okay. I don't know. We didn't have a summary judgment. And we just, I mean, the issue is, what if everything she said was true? What if everything my client says is true? If everything my client says is true, then is she entitled to have a jury-determined way to credibility look at witnesses? And we think so, Your Honor. It's very courageous for her to come forward in this situation and try to. She may lose anyway. Say again? She may lose anyway. She may lose anyway. But she's entitled. She's going to come forward. I mean, she was pro se. So, I mean, it's not like she's not making this stuff up. And so if she's entitled, at least a day in court. I mean, at least I hope you feel that way. And I think the summary judgment standard says she is. I think so. Thank you, Mr. Bryant. Thank you. Appreciate it. We'll come down and agree counsel, and then we'll take up the next case.
judges: Robert B. King, Albert Diaz, Andre M. Davis